UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL A. ROSIN,

     Petitioner,

                        Case No:8:09-CV-1158-T-24MAP
                              8:05-CR-143-T-24MAP

UNITED STATES OF AMERICA,

     Respondent.

_____/

## O R D E R

This matter is before the Court on remand from the Court
of Appeals for the Eleventh Circuit that found this Court
applied the wrong standard in evaluating the prejudice prong
of Petitioner's ineffective assistance of counsel claim.  The
Eleventh Circuit vacated this Court's order denying Petitioner
relief pursuant to 28 U.S.C. § 2255 and remanded so this Court
can evaluate the prejudice prong of Petitioner's ineffective
assistance of counsel claim under the "reasonable probability"
standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668
(1984), and determine whether an evidentiary hearing is
warranted.  Also before the Court are Petitioner's "Motion for
Evidentiary Hearing on [his] Motion to Vacate, Set Aside, or
Correct the Conviction, Judgment and Sentence Pursuant to 28
U.S.C. § 2255 (D.E. 279)" (D-33), the Government's response

(D-34), and Petitioner's Motion for Leave to File Reply to Government's Response in Opposition to Petitioner Rosin's Motion for Evidentiary Hearing (D-35).

By way of background, Petitioner, a former dermatologist who operated a lucrative dermatology practice, was originally charged in an Indictment on April 7, 2005 with fifty (50) counts of health care fraud and making false statements in a health care matter in violation of 18 U.S.C. §§ 1347 and 1035. He retained attorneys Theresa Van Vliet and Gregory Kehoe to represent him. Attorney Patsy Zimmerman-Keenan also assisted in Petitioner's representation.

On July 14, 2005, the Government filed a Superseding Indictment charging thirty-five (35) counts of health care fraud and thirty-five (35) counts of making false statements in a health care matter. In essence, the Superseding Indictment charged that Petitioner performed unnecessary biopsies, falsely diagnosed cancer, performed unnecessary Mohs surgeries, and submitted false claims for payment. Petitioner's practice depended almost entirely on Mohs surgery, a dermatological microscopic surgery in which the surgeon removes one layer of skin at a time and examines it under a microscope to determine whether all of the malignancy

2

is removed.  The surgery often requires only one or two stages but sometimes requires four or more stages to remove all of the skin cancer.

A jury trial commenced on February 6, 2006.  The month-long trial included extensive testimony from government investigators, multiple medical experts, former employees and patients, and character witnesses.  The evidence demonstrated that at least 95% of Petitioner's patients were elderly Medicare recipients.  (Cr-D-151, p. 40; D-152, p.35, 124; D-155, p. 42.)  The Medicare program reimburses for each stage of Mohs surgery, so the more stages required, the higher the reimbursement.   From September 1998 through May 2005, Petitioner performed 5,980 skin biopsies of which he reported 99.43% revealed cancer.  (Cr-D-154, p. 134-36, 157.)  During that time, he billed Medicare for 4,118 Mohs surgeries, 4,074 (98.93%) in which he performed four stages of surgery.  (Id. at p. 132-33, 150-51.)

Petitioner's former employees testified that they were improperly trained in preparing biopsy slides.  Some of the employees testified they had altered the slides on occasions. For instance, Julia Papagianis testified she once replaced a patient's skin tissue on a biopsy slide with gum to see if

Petitioner would diagnose it as basal cell carcinoma and that Petitioner indeed diagnosed cancer and performed surgery on the patient.  (Cr-D-147, p. 203-07; Cr-D-148, p. 53, 73.)

Dusty Bartlett, one of Petitioner's former lab technicians, testified that she could not understand why every patient had cancer. (Cr-D-151, p. 58.)  As an experiment, she once threw out a patient's specimen and placed styrofoam on a biopsy slide for Petitioner's review.  Bartlett recalled that Petitioner diagnosed basal cell carcinoma and performed surgery on that occasion.  (Id. at 54-58, D-152,p. 79, 81.) She recalled that Petitioner once advised a patient that the patient had cancer without even reviewing the slide first. (D-151, p. 26.)

Sandra Brown, another lab technician, testified that she once lost a patient's specimen so she used another employee's skin for the biopsy slide.  (Cr-D-148, p. 140-43, 151-52.) Carolyn Ferrara, the office manager, confirmed that Brown used Ferrara's skin on a biopsy slide after Brown lost the patient's specimen.  (D-155, p. 53-56.)  Ferrara testified that Petitioner told the patient that the patient had basal cell carcinoma and directed the staff to schedule surgery. (Id. at 56.)

4

The Government presented expert testimony from dermatologists regarding their own practices and their review of Petitioner's patients' slides. Dr. Pearon Lang testified that only 38% of his own patients that he biopsied had cancer and that most of his Mohs surgeries involved only two stages. (Cr-D-145, p. 94, 144; D-146, p. 59-60, 85; D-147, p. 35.) Dr. Lang reviewed 142 biopsy slides and files of Petitioner's patients. He found no skin tissue was present on eight slides, tissue other than human tissue was present on 17, and 83 slides were too poor in quality for interpretation. He said he thought cancer was probably present on 14 slides, but the quality was too poor for a conclusive interpretation. No malignant tumor was present on 11 and cancer was present on only nine slides. (Cr-D-145, p. 147-209, D-146, p. 13-56.)

Dr. Franklin Flowers testified that he performs about 500 Mohs surgeries a year, cures 65% of his patients in only one stage, and performs surgery of four or more stages in less than one percent of his patients. (D-150, p. 96, 101.) He reviewed the 70 Superseding Indictment slides and could not definitively diagnose cancer due to the poor preparation of the slides. He opined that the slides were the worst he had ever seen and that Mohs surgery was not medically reasonable

in any of the patients.  (Cr-D-150, p. 38-41, 108-114.)

Petitioner admitted that the slides were in "awful" condition but insisted that they were not in that condition when he originally reviewed them.  (D-156, p. 163.)  He attacked the credibility of his former employees.  He attributed his 99% cancer biopsy rate to the statement that he only performed biopsies when he was certain cancer was present.  (D-157, p. 50-52, 56.)  A jury ultimately found Petitioner guilty of all seventy (70) counts of the Superseding Indictment on March 3, 2006.

Thereafter, attorney Van Vliet withdrew as counsel and attorney Joel Hirschhorn entered a notice of appearance. Attorney Kehoe continued to represent Petitioner through sentencing.  The sentencing hearing encompassed six full days and various witnesses testified.  Petitioner agreed that he had a total of 867 patients.  (Cr-D-225, p. 144.)  Dr. Flowers, who had reviewed 4,174 slides of Petitioner's patients, found cancer present on 1087 and no cancer on 973 slides, but was unable to interpret 2,114 slides.  (Cr-D-193, p.6-7; D-207, p. 126-27.)  Dr. Flowers opined that the slides were so poorly prepared, he would not have been able to rely on any of the slides, even those on which he found cancer, to

diagnose cancer.   (D-193, at p. 8-13, 18-20, 23-28.)   The Court applied a six-level increase for an offense involving more than 250 victims pursuant to U.S.S.G. § 2B1.1(b)(2)(B). (Cr-D-225, p. 145.)

The Court applied sentencing adjustments for abuse of a position of trust and the use of sophisticated means (Cr-D-246, p. 4; Cr-D-225, p. 155-56).   It found that Petitioner had obstructed justice by deliberately falsely testifying at trial and thus a two-level adjustment pursuant to U.S.S.G. § 3C1.1 was appropriate.   (Cr-D-246, p. 35-38.)

The Court further found appropriate a two-level adjustment for causing serious bodily injury.   (Cr-D-246, p. 62-63.)   In this regard, William Merritt testified that his chest wound from Mohs surgery performed by Petitioner opened up and he had to have a plastic surgeon graft skin from a different part of his body to close the wound.   (Cr-D-206, p. 39-50.)   Additionally, patient Anne Stein developed cellulitis in her hand after Petitioner performed Mohs surgery and another doctor subsequently found a piece of metal in her wound.   (Cr-D-207, p. 80, 82.)   After all of the applicable adjustments, Petitioner's total offense level was calculated as a 38 and a criminal history category of one, with a

guideline range of 235 to 293 months imprisonment. (Cr-D-246, p. 120.)

On October 4, 2006, the Court completed the sentencing proceedings and sentenced Petitioner to a total term of incarceration of 264 months, to be followed by a three-year term of supervised release. The Court also ordered restitution and forfeiture.

Petitioner appealed. The Eleventh Circuit found "Rosin's challenges to be largely without foundation" and affirmed his conviction and sentence. United States v. Rosin, 263 Fed. Appx. 16 (11th Cir.), cert. denied, 554 U.S. 920 (2008).

Petitioner, represented by attorney Hirschhorn, filed a timely § 2255 motion raising various claims of ineffective assistance of counsel, including that his counsel grossly underestimated his prison sentence if he were convicted after a trial, failed to discuss the benefits of pleading guilty, and failed to solicit a plea offer from the Government. He further claimed he was unlawfully sentenced.

By order dated June 26, 2011, the Court denied Petitioner's § 2255 motion without an evidentiary hearing. With respect to Petitioner's claims of ineffective assistance in pretrial consultation, the Court found that there was

conflicting evidence and could not determine on the existing record whether Petitioner's counsel performed deficiently under the first prong of the <u>Strickland</u> test.   The Court, however, found that Petitioner failed to meet the prejudice prong of the test because he failed to show by clear and convincing evidence that, but for his counsel's alleged ineffective assistance, there is a reasonable probability he would have pled guilty.

The Eleventh Circuit granted a certificate of appealability on the following issue:

> Whether the district court erred in denying without an evidentiary hearing, Rosin's claim that counsel rendered ineffective assistance by grossly underestimating the sentence that he would receive if he were convicted at trial, and by failing to pursue a plea bargain.

(Cv-D-28, p.2.)   The Eleventh Circuit held oral argument on June 12, 2013.   It appears counsel for Petitioner recognized that there is no authority imposing a duty on defense counsel to seek a plea agreement on his client's behalf because, at that time, counsel for Petitioner urged the appellate court to adopt a new rule, which he named the "Rosin Rule," which would impose a duty on defense counsel to solicit a plea offer. However, in circumstances similar to this case, the Seventh Circuit in <u>Welch v. United States</u>, 370 Fed. Appx. 739 (7th

9

Cir. 2010), rejected the petitioner's claim that his counsel should have ignored his protestations of innocence and independently approached the government about a plea offer. The Seventh Circuit explained, "[w]e do not require counsel to do that which is futile, and thus we would not mandate that counsel engage in the empty endeavor of negotiating a plea agreement for a client who has made it clear that he has no interest in entering a guilty plea." Id. at 743 (citation omitted). The court continued:

> [m]ore importantly, creating a rule that counsel should disregard his client's wishes would work the additional harm of jeopardizing the attorney-client relationship and the trust that counsel must establish to effectively represent his client. We would not require that counsel engage in such a betrayal, which necessarily would demonstrate a lack of faith in his client's position and have the unintended effect of preventing counsel from providing the type of reasonable assistance that the Sixth Amendment requires.

Id.

In its opinion issued June 19, 2013, the Eleventh Circuit found this Court used the wrong legal standard in deciding the prejudice prong of the Strickland test. As previously indicated, the Eleventh Circuit vacated this Court's order and remanded the case for the Court to evaluate the prejudice prong under the "reasonable probability" standard and

determine whether an evidentiary hearing is warranted.

The Eleventh Circuit mandate issued on August 13, 2013. Thereafter, Petitioner filed his motion for evidentiary hearing. The Government filed its opposition, and Petitioner filed a motion for leave to file a reply.

To succeed on the second prong of the Strickland test on a claim relating to an attorney's advice about pleading guilty, a petitioner must show "a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1503-04 & n. 7 (11th Cir. 1995). Significantly, "[a] defendant cannot show prejudice if he offers no evidence that he would have accepted a plea offer absent his lawyer's errors." Glover v. United States, 522 Fed. Appx. 720, 723 (11th Cir. June 26, 2013) (per curiam) (citing Coulter, 60 F.3d at 1504).

The current issue before the Court is whether Petitioner has demonstrated a reasonable probability that, absent his counsel's alleged ineffective assistance, he would have pled guilty and would not have insisted on going to trial. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at

694.   A petitioner must show a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation omitted).   Petitioner must "affirmatively prove prejudice" to meet the second prong of an ineffective assistance of counsel claim. Strickland, 466 U.S. at 693.

Petitioner requests an evidentiary hearing on the factual issues to establish prejudice.   The Government argues that Petitioner has not met his burden of demonstrating that an evidentiary hearing is warranted.   It contends that the record makes clear that Petitioner has not shown a reasonable probability that Petitioner would have pled guilty absent former counsel's alleged conduct.

The district court shall hold an evidentiary hearing on a motion attacking sentence "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).   An evidentiary hearing is not necessary, however, where the record affirmatively contradicts the petitioner's allegations or the claims are patently frivolous. Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002).

Upon a review of the record and the law of the Eleventh

Circuit, the Court finds that Petitioner has not shown prejudice as a result of his counsel's alleged conduct and an evidentiary hearing is not warranted.  The Eleventh Circuit has found that prisoners have not alleged sufficient facts to show prejudice under circumstances similar to those here in Brooks v. United States, 248 Fed. Appx. 77, 82 (11th Cir. 2007) (per curiam), Scott v. United States, 325 Fed. Appx. 822, 825 (11th Cir.) (per curiam), cert. denied, 130 S.Ct. 435 (2009), and Oliver v. United States, 292 Fed. Appx. 886 (11th Cir. 2008) (per curiam), cert. denied, 129 S.Ct. 2023 (2009).

In Brooks, the Eleventh Circuit rejected the prisoner's argument that he was entitled to an evidentiary hearing on his § 2255 claim that his counsel failed to inform him that he was not eligible for parole.  Brooks alleged that had he been advised that he faced a life sentence without the possibility of parole he "probably" would have accepted a plea agreement offered by the government.  248 Fed. Appx. at 79.  The Eleventh Circuit found Brooks had failed to satisfy the prejudice prong.  The court explained as follows:

> The record reflects that throughout the entire case,
> Brooks had not expressed any desire or intent to
> plead guilty.  In his declaration, Brooks asserted
> that he was wrongly accused and the testimony of his
> codefendants that implicated him in unsuccessful
> attempts to purchase cocaine and marijuana was

13

false.  He also said that had he been allowed to
testify at trial, he would have explained that he
was not aware of any drug deals and did not know
most of his codefendants.  Even in this Court, he
says only that he "probably" would have pled guilty.
On this record, which includes Brooks's adamant and
consistent   assertions   of   innocence   and   his
skepticism regarding the government's plea offer, we
cannot conclude that but for either of the instances
of alleged ineffective assistance, Brooks would have
pled guilty, or that even if he did, the district
court would have accepted the plea.

Id. at 82 (footnote omitted).

In Scott, the petitioner alleged his attorney failed to

advise him that he could avoid a mandatory life sentence by

pleading straight up prior to the government filing a 21

U.S.C. § 851 information.  On appeal, the Eleventh Circuit

found that the district court did not abuse its discretion in

failing to hold an evidentiary hearing.  In finding the

petitioner failed to show prejudice, the court explained:

Scott   attempts   to   demonstrate   prejudice   by
suggesting he would have given a guilty plea greater
consideration if his counsel had advised him
differently and by stating he could have received a
lower sentence if he had pled guilty without a plea
agreement.  In Diaz, we concluded a petitioner had
failed to establish prejudice when he argued a
guilty plea would have resulted in a lower sentence
and offered "after the fact testimony concerning his
desire to plead." 930 F.2d at 835.  In this case,
Scott only goes so far as to say he should have been
able to take the lower sentence into account when
deciding whether to plead guilty.  Considered in
conjunction with his counsel's affidavit, which
indicated Scott strongly advocated his innocence and

14

was not amenable to pleading otherwise, Scott's argument does not establish a reasonable probability he would actually have pled differently but for his counsel's alleged advice. See id. at 834-35. Thus, Scott's argument is insufficient to make the required showing for Strickland's second prong.

Scott, 325 Fed. Appx. at 825.

In Oliver, the district court, without holding an evidentiary hearing, denied the petitioner's § 2255 motion which alleged ineffective assistance of counsel in failing to advise him of a plea offer extended by the government on the eve of trial. 292 Fed. Appx. at 886. The Eleventh Circuit, in finding the district court did not abuse its discretion in denying the motion without an evidentiary hearing, found that Oliver failed to demonstrate a reasonable probability he would have pled guilty but for his attorney's error. The Eleventh Circuit explained as follows:

> Here, Oliver stated only that he would have "seriously considered" the government's plea offer, which, as in Coulter, falls short of the required standard. In addition, Oliver maintained his innocence throughout trial and during his sentencing, which undermines his claim that he would have consented to a plea agreement. See Diaz, 930 F.2d at 835 *888 (rejecting defendant's claim that he would have accepted a plea agreement when he had not indicated any desire to plead guilty prior to his conviction). As a result, Oliver has not established that, but for Spruell's failure to inform him of the government's proposed plea offer, the outcome would have been different.

Id. at 887 (footnote omitted).

Similarly, Petitioner fails to allege reasonably specific, non-conclusory facts that there is a reasonable probability that but for his counsel's errors the result of his case would have been different.  He does not state or provide any other evidence that he ever expressed an interest in pleading guilty or even considered doing so prior to filing his § 2255 motion.  Notably absent from Petitioner's affidavit is any statement by Petitioner that he would have <u>accepted</u> a plea agreement but for his counsel's alleged errors.  Nor does Petitioner state he would have pled guilty without the benefit of a plea agreement but for his counsel's errors.  Rather, Petitioner states that he was unaware that his sentence "could be increased beyond 5 to 6 years based on issues that I was not charged with at trial, tried for or convicted of by the jury," and, "[h]ad I known my sentence could have been enhanced to 22 years I would have insisted Theresa Van Vliet seek a plea bargain on my behalf or get a new attorney who would...."  (Cv-D-3-1, p.2.)  That he would have had counsel "seek a plea bargain" is no more of a sufficient allegation for purposes of the second prong of the <u>Strickland</u> test than those in <u>Brooks</u>, <u>Scott</u> and <u>Oliver</u>.

Furthermore, the evidence of record affirmatively contradicts Petitioner's claim that he would have had his attorney seek a plea bargain and demonstrates that there was not a substantial likelihood of a different result. See Cullen, 131 S.Ct. at 1403. In this regard, Petitioner professed his innocence and claimed he had been set up from the beginning. He testified in his own defense at trial over a period of three days. He repeatedly denied performing unnecessary surgeries on his patients. He claimed that he had properly trained his staff and that when the slides of his patients were made and originally read by him, there was evidence of cancer requiring, in most cases, four stages of Mohs surgery. Petitioner essentially claimed that his staff conspired together to set him up and either purposely failed to properly prepare the slides so that they would deteriorate after being initially read or had tampered with a considerable number of the slides after he had read them. Even after being found guilty, when he could have then chosen to admit his responsibility, he continued to maintain his innocence. At sentencing, he continued to claim the fraud was a result of his employees' actions and that he was unaware of the conduct of his employees. His family also maintained Petitioner's

innocence through sentencing and offered testimony that they too believed he had been set up.   Petitioner continued to profess his innocence on appeal.

Nowhere in this record is there any indication by the Petitioner of regret, remorse, or sorrow or any sentiment that connoted a sense of culpability or admission of wrongdoing of any kind.   Nowhere in this record is there any indication of any likelihood that this Petitioner would ever confess to his family, his friends, his synagogue, or this Court that he committed the repeated and unjustified physical invasions of the bodies of his patients which the Petitioner had to know he was doing, yet continued to deny.

The Government, however, has presented evidence from Petitioner's former counsel that Petitioner would not have accepted a guilty plea or pled straight up.   Theresa Van Vliet opined that "there was no way that Michael Rosin would entertain a plea and, indeed, would shut down any discussion of such a course of action."   (Cv-D-13, Exh. 4, ¶ 8.) She explains that, "Michael Rosin insisted from that first meeting and throughout the pretrial and trial proceedings that he was innocent and that he wanted to exercise his right to proceed to trial."   (Cv-D-13, Exh. 4, ¶ 7.)   She states that, after

the Government agreed to a voluntary surrender, she told AUSA Kathy Ho that Petitioner "firmly maintained his innocence and was insistent on exercising his right to trial." (Id. at ¶ 8.)  Van Vliet continues, "throughout my representation of him, Michael Rosin always insisted that he was innocent, that he had done nothing wrong, and that he wished to have a trial" and that Petitioner's desire for a trial was "unwavering." (Id.)

Van Vliet explains that she arranged for a mock jury trial in accordance with her practice for clients, like Petitioner, who are "unwilling to accept a realistic assessment of the probable outcome of the case." (Id. at ¶ 9.)  She recalls that even after receiving negative comments from the mock jury about his credibility, Petitioner continued to maintain his "absolute innocence" position.  Van Vliet explains that, "Michael Rosin was so steadfast and insistent regarding his innocence of all charges against him that he refused to even discuss with his wife the probability of a significant period of incarceration if he were to be found guilty of any of the charges against him." (Id. at ¶ 10.)

Patsy Zimmerman, who also worked on the case, stated in her affidavit that she had "a clear sense and understanding

that Michael Rosin was firm in his position that we would not concede any criminal liability; rather that he wanted a trial and he wanted to testify in that trial." (Cv-D-13, Exh. 5, ¶ 4.)

Gregory Kehoe states in his affidavit that, during his first meeting with Petitioner, "it was clear from his professed statements of innocence that he did not want to consider pleading guilty under <u>any</u> circumstances." (Cv-D-17-2, p. 4, emphasis added.) Significantly, Kehoe continues:

> [t]his position was re-affirmed by Rosin on several occasions.  The most telling example took place during a telephone conference conversation with Rosin and co-counsel in which the subject of a possible guilty plea was raised.  During the call, Rosin became extremely upset, insisted that he was innocent, that he had been "set up" by others, and that we (counsel) were being disloyal to him by raising the prospect of a guilty plea disposition.

(<u>Id.</u>)

The facts here differ from that of <u>Lalani v. United States</u>, 315 Fed. Appx. 858 (11th Cir. 2009).  There, the petitioners alleged in a § 2255 motion that they instructed their counsel to pursue a plea agreement but that their counsel told them a plea agreement was not in their best interests.  <u>Id.</u> at 859

Here, at no time did Petitioner request his counsel to

20

seek a plea agreement.  Rather, not only did Petitioner claim
innocence, the evidence shows that Petitioner "did not want to
consider pleading guilty under any circumstances."  (Cv-D-2,
¶ 4.)  Most significantly, and undisputed by Petitioner[1], is
that when counsel broached the subject of a possible guilty
plea, Petitioner became extremely upset and felt that his
counsel were being disloyal to him by raising the prospect of
a plea.[2]

Finally, there is no evidence that the Government ever
offered a formal plea agreement.  The only evidence relating
to the Government's interest in resolving the case short of
trial is Van Vliet's statement that AUSA Ho inquired at the
beginning of the case whether there was a possibility of
Petitioner pleading guilty and that Van Vliet responded she
did not think so.  Even assuming the Government would have
offered a plea agreement, there is no evidence to indicate
what the terms may have been or that Petitioner or the Court

---

[1] Petitioner states in his affidavit that at no time did Van Vliet
discuss a plea bargain option or suggest that Petitioner seek one.  (Cv-
D-3-1, p.2.)  However, Petitioner does not deny the discussions regarding
a guilty plea set out in the affidavit of attorney Kehoe.

[2] It is likely that Petitioner's current counsel urged the Eleventh
Circuit adopt a new rule for this case which would require counsel to
seek a plea bargain even if the defendant makes it clear he does not wish
to plead guilty.  This approach was disposed of in the case of Welch v.
United States, cited at page 9 of this Order.

would have been accepting of the terms.   Additionally, in order for the Court to accept a guilty plea, Petitioner would have had to confess to a sufficient factual basis acknowledging his involvement in the fraud and the improper surgeries, which, even to date, he has not done.

In light of the foregoing, Petitioner has failed to meet the prejudice prong of the <u>Strickland</u> test, and, as a result, the Court need not address the performance prong.   <u>Windom v. Sec'y of Dept. Of Corr.</u>, 578 F.3d 1227, 1248 (11th Cir. 2009), <u>cert.</u> <u>denied</u>, 130 S.Ct. 2367 (2010) ("Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim against the petitioner, there is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one.")   The Court therefore finds Petitioner is not entitled to relief as to his claim relating to ineffective assistance of counsel in pretrial consultation.

IT IS THEREFORE ORDERED that:

(1)  The Court finds that Petitioner has not demonstrated prejudice resulting from his counsel's alleged ineffective assistance.   As such, Petitioner's Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.

(2) Petitioner's "Motion for Evidentiary Hearing on [his] Motion to Vacate, Set Aside, or Correct the Conviction, Judgment and Sentence Pursuant to 28 U.S.C. § 2255 (D.E. 279)" (D-33) is DENIED.

(3) Petitioner's Motion for Leave to File Reply to Government's Response in Opposition to Petitioner Rosin's Motion for Evidentiary Hearing (D-35) is DENIED as unnecessary.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability (COA). A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, defendant "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u> 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal <u>in</u> <u>forma</u> <u>pauperis</u>.

DONE AND ORDERED at Tampa, Florida this __2nd__ day of December, 2013.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE